UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| WILMA JONES, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 2:16-CV-13 |
| ) | |
| HOSPITAL OF MORRISTOWN, *et al.*, ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION AND ORDER

This Fair Debt Collection Practices Act, ("FDCPA") 15 U.S.C. § 1692 *et seq.,* case is before the court to address two motions to dismiss filed by the defendants. The defendants, Hospital of Morristown, Inc., d/b/a Lakeway Regional Hospital ("Lakeway") and Professional Account Services, Inc. ("PASI") filed a motion to dismiss the plaintiffs' complaint, [Doc. 15], and a motion to dismiss the plaintiffs' first amended complaint, [Doc. 22]. The plaintiffs have responded to the motion to dismiss the amended complaint, [Doc. 26], and the defendants have replied, [Doc. 28]. The matters are ripe for review.

**I. FACTS**

The plaintiffs filed this class action complaint alleging state law claims and FDCPA violations related to the defendants' attempts to collect debts. The complaint alleges that the plaintiffs incurred debts to Lakeway for medical services provided to the plaintiffs. [Complaint ¶¶ 15, 18]. After the plaintiffs defaulted on the debts, Lakeway "assigned the debts to PASI" for collection, and PASI hired defendant Michael Mossman ("Mossman") to attempt to collect the debts from plaintiffs. [*Id.* ¶ 18]. Debt collection suits were filed in state court against the

1

plaintiffs using a state court civil summons and sworn affidavit. The plaintiffs allege that "an employee of Mossman prepared the civil summonses" and "employees or agents of PASI" signed the sworn affidavits. [*Id.* ¶¶ 23, 26].

The civil summons and sworn affidavit filed in state court against plaintiff Jones ("Jones") stated that "the balance due and owing on a Sworn Account hereto the Court shown in the amount of $588.51, together with a reasonable Attorney Fee, plus post judgment interest at the legal rate, civil process fees in the amount of $35.00, less any payments credited and the costs of this cause." [*Id.* ¶¶ 20, 24, Exhibit 18-1]. The plaintiffs allege that the sworn affidavit stated Jones owed $588.51 on two separate accounts but "makes no mention of attorney fees." [*Id.* ¶ 29]. A default judgment was entered in the amount of $688.51, "plus interest at the rate of 5.25% and cost of suit." [*Id.* ¶ 31, Exhibit 18-1]. Following entry of the default judgment, a wage garnishment was issued against Jones to collect the default judgment plus court costs, fees, and interest for a total of $840.46. [Exhibit 18-3].

The civil summons and sworn affidavit in state court was filed against plaintiffs Barbara Long and Thomas Long ("Long") and stated that "the balance due and owing on a Sworn Account hereto the Court shown in the amount of $696.72, together with a reasonable Attorney Fee, plus post judgment interest at the legal rate, civil process fees in the amount of $35.00, less any payments credited and the costs of this cause." [*Id.* ¶¶ 21, 25, Exhibit 18-2]. The plaintiffs allege that the sworn affidavit stated Long owed $696.72 on a single account but "makes no mention of attorney fees." [*Id.* ¶ 29]. A default judgment was entered in the amount of $796.72, "plus interest at the rate of 5.25% and cost of suit." [*Id.* ¶ 32, Exhibit 18-2].

The plaintiffs filed this class action lawsuit alleging FDCPA violation and state law claims for improper entry of default judgments "that exceed the amount demanded" and unjust

2

enrichment. The amended complaint filed on June 13, 2016, alleges the default judgments entered against the plaintiffs are void because they are in excess of the amount requested in the pleadings and asks the Court to set aside the default judgments. [*Id.* ¶ 33-34]. The plaintiffs also allege that the defendants have unjustly benefited from the payments made by the plaintiffs on the void judgments and ask the Court to provide restitution to the plaintiffs in the amount of the payments made and pre-judgment interest. Finally, the plaintiffs allege that "requesting the entry of default judgments in the amounts of $688.51 against Jones or $796.72 against the Longs, when it is apparent from the face of the civil summons that Defendants had only demanded $588.51 and $696.72, respectively, without providing Plaintiffs an opportunity to dispute a specific amount for attorney fees, are false, deceptive, and misleading representations" and violations of the FDCPA. [*Id.* ¶ 46].

## II. STANDARD OF REVIEW

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) eliminates a pleading or portion thereof that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Moreover, Federal Rule of Civil Procedure 8(a)(2) requires the complaint to contain a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) requires the Court to construe the allegations in the complaint in the light most favorable to the plaintiff and accept all the complaint's factual allegations as true. *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990). The Court may not grant a motion to dismiss based upon a disbelief of a complaint's factual allegations. *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990). The Court must liberally construe the complaint in favor of the party opposing the motion. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). However, the plaintiff must allege facts that, if accepted as true, are

3

sufficient "to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and to "state a claim to relief that is plausible on its face." I*d.* at 570; *see also Ashcroft v. Iqbal*, – U.S. –, 129 S.Ct. 1937, 1949-50 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S.Ct. at 1949. Moreover, this Court need not "'accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Ashcroft*, 129 S.Ct. at 1949. Lastly, this Court may consider documents central to the plaintiff's claims to which the complaint refers and incorporates as exhibits. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

A motion to dismiss pursuant to Rule 12(b)(1) for lack of jurisdiction may be either an attack on the face of the complaint or on the factual basis of jurisdiction. *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005). A factual attack challenges the existence of jurisdiction, apart from the pleadings. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1334 (citing *Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884, 890 (3d Cir. 1977)). When a factual issue exists in a Rule 12(b)(1) motion, the district court is "free to weigh the evidence and satisfy itself as the existence of its power to hear the case." *Id.* (citing *Mortensen*, 549 F.2d at 890-91). The court is "empowered to resolve factual disputes" arising out of a Rule 12(b)(1) challenge to subject matter jurisdiction. *Id.* (citing *Rogers v. Stratton Industries, Inc.*, 798 F.2d 913, 915 (6th Cir. 1986)).

**III. ANALYSIS**

    **1. State Law Violations**

4

The defendants argue that the Court lacks subject matter jurisdiction over the plaintiffs' state law claims under the Rooker-Feldman doctrine. The Rooker-Feldman doctrine arises out of two Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The Supreme Court clarified the Rooker-Feldman doctrine stating that application of the doctrine is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobile Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). Both plaintiffs in *Rooker* and *Feldman* requested the district court to "overturn an injurious state-court judgment" but only the Supreme Court has jurisdiction to review a state court's judgment. *Id.* at 292.

The court must look at the source of the plaintiff's injury alleged in the federal complaint to determine whether a claim is one that attacks a state court judgment, and thus is within the Rooker-Feldman scope, or an independent claim over which a district court may assert jurisdiction. *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). "If the source of the injury is the state court decision, then the *Rooker–Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." *Id.* For a claim to fall within the Rooker-Feldman doctrine's scope, "the source of the injury must be from the state court judgment itself; a claim alleging another source of injury is an independent claim." *Id.* at 394.

The plaintiffs' state law claims argue that the default judgments entered against them were entered beyond the state court's authority and should be set aside as "void." Further, the plaintiffs allege the defendants were unjustly enriched by the payments made on the allegedly

5

void judgments, including the wage garnishment. The Court is hard-pressed to find an instance where the Rooker-Feldman doctrine would more clearly apply. The plaintiffs in this suit are clearly "state court losers complaining of injuries caused by state-court judgments" that were entered before these proceedings were commenced. The first claim specifically requests this Court to "set aside" and declare the state court default judgments "void"; thereby specifically asking this Court to review and reject the state court judgments. In the second claim requesting restitution for payments made pursuant to the judgments, the "source of the injury" is clearly the default judgments in state court.

In their response, the plaintiffs argue that the Court has jurisdiction to hear the state law claims and to grant the relief requested, setting aside the state court default judgments and restitution of monies paid on the judgments. The plaintiffs cite a Sixth Circuit case holding that an exception to the general rule prohibiting district court review of a state court judgment exists and a district court "may entertain a collateral attack on a state court judgment which is alleged to have been procured through fraud, deception, accident, or mistake." *Sun Valley Foods Co. v. Detroit Marine Terminals, Inc.*, 801 F.2d 186, 189 (6th Cir. 1986) (quoting *Resolute Insurance Co. v. North Carolina*, 397 F.2d 586, 589 (4th Cir. 1968)). The plaintiff alleges in the complaint that:

> Additionally, procurement by Defendants of attorney fees on a default judgment without Plaintiff being allowed an opportunity to decide whether they wish to expend the time, effort, and money necessary to defend the action is fundamentally unfair, and with no attempt being made by Defendants to introduce any proof to the state court that Lakeway was entitled to the amount of attorney fees included in the default judgment, the amount of the default judgment was entered by mistake of the state court without review of any evidence provided by Defendants in support of its claim for attorney fees.

6

[Doc. 18 ¶ 38]. The plaintiffs make the barest allegation that the state court default judgment was "entered by mistake." The plaintiffs fail to account for the fact that the exception stated in *Sun Valley Foods* "focuses on situations involving the improper procurement of the judgment, i.e., where the state court winner deceived the Court into a wrong decree." *International Christian Music Ministry Inc. v. Ocwen Federal Bank, FSB*, 289 Fed. App'x 63, 65 (6th Cir. 2008) (internal citations omitted). The exception does not extend to mere judicial errors committed by the state court. *Id.* (citing *Resolute Insurance Co.*, 397 F.2d at 589). This is not an allegation of mistake by the Court but rather an allegation of judicial error couched as an alleged "mistake", which is not covered by the exception discussed in *Sun Valley Foods*.

These state law claims have not alleged any independent injury but instead asks this court to review and reject the state court judgments as void. The Court finds that the plaintiffs' state law claims fall within the Rooker-Feldman doctrine, which deprives this Court of jurisdiction over those claims. The state court claims, Count One requesting the court "set aside" the "void" default judgments, and Count Two asking the Court to order restitution for payments made pursuant to those judgments, are hereby DISMISSED WITH PREJUDICE.

### 2. FDCPA Violations

The FDCPA was passed to eliminate "abusive, deceptive, and unfair debt collection practices." *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting 15 U.S.C. § 1692(a)). The Sixth Circuit has noted that the act is "extraordinarily broad" and must be enforced as written, even when eminently sensible exceptions are proposed in the face of an innocent and/or *de minimis* violation. *See Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992). While § 1692e lists a number of examples of false or misleading representations, the text of the statute itself indicates that the examples are not meant to limit its prohibition on the use of false,

7

deceptive or misleading representations in connection with the collection of a debt. 15 U.S.C. § 1692e. Likewise, § 1692f contains the same language, making clear that the examples set forth therein do not "limit[ ] the general application" of its prohibition on the use of unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C. § 1692f. The Seventh Circuit has observed that the phrase "unfair or unconscionable" used in § 1692f "is as vague as they come." *Beler v. Blatt, Hasenmiller, Leibsker & Moore*, 480 F.3d 470, 474 (7th Cir. 2007).

Here, the plaintiff alleges violations of § 1692e and the following specific enumerated provisions:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.
>
> . . .
> **(2)** The false representation of--
> **(A)** the character, amount, or legal status of any debt;
> **(B)** any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt
>
> . . .
> **(5)** The threat to take any action that cannot legally be taken or that is not intended to be taken.
>
> . . .
> **(10)** The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e.

The plaintiff additionally alleges that the defendants violated § 1692f which prohibits "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. That section provides a non-exhaustive list of specific examples that constitute a violation of the section. *Id.* The plaintiffs specifically allege that the defendants used unfair or unconscionable
8

methods to collect a debt by "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* at § 1692f(1).

In assessing whether particular conduct violates the FDCPA, courts apply "the least sophisticated consumer" test to objectively determine whether that consumer would be misled. *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006); *Smith v. Transworld Systems, Inc.*, 953 F.2d 1025, 1029 (6th Cir. 1992). The least sophisticated consumer test is designed "to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 438 (6th Cir. 2008) (quotations and citation omitted).

The plaintiffs vaguely allege the defendants committed FDCPA violations by "requesting entry of default judgments that exceed demands" of the civil summons "without providing an opportunity to dispute a specific amount of attorney fees." [Complaint ¶ 46]. In their motions, the defendants again argue that the Court lacks subject matter jurisdiction under the Rooker-Feldman doctrine of these alleged FDCPA violations because to find the allegation valid would require the Court to review and reject the state court default judgments. Essentially, the defendants argue that the plaintiffs are complaining that the state court entered judgments in an amount that was greater than the amount alleged on the civil summons; therefore, the source of their alleged injury is the entry of the default judgments, not any collection effort.

The plaintiffs argue in response that they are not complaining of injuries caused by the state court judgments but instead are complaining of collection methods that occurred prior to entry of the judgments and therefore not within the scope of the Rooker-Feldman doctrine. According to the plaintiffs, the FDCPA violation occurred at the time that the defendants

9

submitted the civil summons but failed to provide a specific amount of attorney fees requested. The Court agrees with the plaintiffs that the Rooker-Feldman doctrine does not prohibit consideration of the alleged FDCPA violations. The plaintiffs have alleged, albeit somewhat unclearly, that a violation was committed by the defendants when a civil summons was submitted to the state court requesting "a reasonabe Attorney Fee" but the summons failed to provide a specific amount of attorney fees, thereby causing the plaintiffs to be unable to dispute a specific amount of attorney fees. The alleged conduct occurred when preparing and submitting the civil summons, not upon entry of default judgment. Therefore, the source of the plaintiffs' alleged injuries is the collection practice of the defendants in requesting in the civil summons, a communication to the plaintiffs, an amount for attorney fees but failing to specify a particular amount. The Rooker-Feldman doctrine does not prohibit the Court from considering these allegations.

The defendants also argue that the plaintiffs have failed to state a claim under the FDCPA. The plaintiffs argue that they have sufficiently pled that the civil summons was a communication under the FDCPA that contained false or misleading representations or was a "threat" to take an action that cannot be legally taken. In their response, the plaintiffs argue:

> By failing to include these amounts in the civil summonses and including them in the default judgments, these communications are: (1) false, deceptive, and misleading misrepresentations by the FDCPA Defendants in connection with collection of the debt that include amounts in default judgments that exceed the amount demanded in the civil summonses without allowing Plaintiffs an opportunity to dispute the amount of attorney fees, in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(2)(B), and 1692e(10), (2) a threat by the FDCPA Defendants to take action that cannot be legally taken by including the amounts in default judgments that were not disclosed in the amount demanded, in violation of 15 U.S.C. § 1692e(5), (3), the use of unfair or unconscionable means to collect or attempt to collect the debt, in violation of 15 U.S.C. §

> 1692f, and the collection by the FDCPA Defendants of any amount
> not permitted by law, in violation of 15 U.S.C. § 1692f(1).

[Response, Doc. 26 at 20]. The plaintiffs failed to elaborate any further how the statement in the civil summons is false, misleading, deceptive, unconscionable, or a threat to take an unlawful actions.

The civil summons states the plaintiffs owe an amount for services rendered by Lakeway that corresponds to the sworn account, "amount X together with a reasonable Attorney fee, plus post Judgment interest at the legal rate, civil process fees in the amount of $35.00, less any payments credited. . . ." To the extent that the plaintiffs argue that imposing a default judgment in excess of "amount X" is somehow false, misleading, or deceptive, the Court finds this argument unavailing. The plaintiffs are clearly put on notice in the civil summons that the amount claimed to be owed is greater than "amount X" because the civil summons asks for "amount X, together with" additional fees and sums. Even the least sophisticated consumer cannot be misled that the amount of a default judgment entered if he fails to appear would be greater than "amount X."

Additionally, the plaintiffs have failed to allege how requesting attorney fees in the state court is not permitted by law. Tennessee adheres to the "American rule" for award of attorney fees. *John Kohl & Co. v. Dearborn & Ewing*, 977 S.W.2d 528, 534 (Tenn. 1998); *Pullman Standard, Inc. v. Abex Corp.*, 693 S.W.2d 336, 338 (Tenn. 1985). This rule states that a party in a civil action may recover attorney's fees only if: (1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception to the American rule applies, allowing for recovery of such fees in a particular case. *Taylor*, 158 S.W.3d at 359; *John Kohl*, 977 S.W.2d at 534. Even in their response to the motion, the plaintiffs argue only that the defendants did not include a contract providing for attorney fees during the state court suit. The

plaintiffs have not alleged that the defendants were not legally able to collect attorney fees nor have they alleged that there was no agreement permitting collection of fees. An allegation of failing to present a contract for attorney fees at the state court level does not sufficiently allege a threat to take an action not allowed by law.

Finally, the plaintiffs' argument that the failure to provide a specific amount of attorney fees in the civil summons is somehow misleading or deceptive is unpersuasive. The plaintiffs have failed to provide any factual allegation as to why failing to include a specific attorney fee amount is misleading or deceptive for the consumer. Instead, in both the complaint and the response, the plaintiffs merely recite the legal elements that such an action is false and misleading. Without a factual allegation asserting how requesting a "reasonable Attorney fee" was misleading, confusing, or deceptive, the plaintiffs have failed to state an FDCPA violation. Additionally, the amount of attorney fees to be collected may not be determined at the time the civil summons is created because the defendants may not be aware of the amount of time or expense that will be expended on the collection efforts. The Court does not find that requesting a "reasonable attorney fee" in a civil summons is false or misleading to the least sophisticated consumer given the plaintiffs' lack of supporting factual allegations. The FDCPA violations, Counts Three through Nine, are DISMISSED WITH PREJUDICE.

## IV. CONCLUSION

For the reasons stated above, pursuant to the Rooker-Feldman doctrine, Counts One and Two of the complaint asking the Court to set aside state court default judgments and order restitution for amounts paid on those judgments are hereby DISMISSED WITH PREJUDICE. Additionally, the plaintiffs have failed to state a claim under the FDCPA and Counts Three through Nine of the complaint are also hereby DISMISSED WITH PREJUDICE.

ENTER:

                                                                        s/J. RONNIE GREER
                                                              UNITED STATES DISTRICT JUDGE